# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RENAE PRUITT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-18-1204-STE |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.**[1] ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Renae Pruitt brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) denial of disability benefits. The SSA Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.   PROCEDURAL BACKGROUND

Plaintiff's application was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-19).

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security and he is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Ms. Pruitt then filed an appeal in this Court, which remanded the matter for further administrative proceedings. (TR. 373-377). Following two additional administrative hearings, the ALJ issued another unfavorable decision. (TR. 297-308). Plaintiff did not file an appeal with the Appeals Council, but instead filed the instant action. (ECF No. 1). Thus, it is in this posture that the case is before the Court once again, with the second decision of the ALJ being the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 10, 2011, the application date. (TR. 299). At step two, the ALJ determined Ms. Pruitt had the following severe impairments: rheumatoid arthritis; migraines; asthma; degenerative disc disease; and obesity. (TR. 299). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 300).

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (TR. 307). The ALJ further concluded that Ms. Pruitt had the residual functional capacity (RFC) to:

> Lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about six hours during an eight-hour workday and can stand and walk for about six hours during an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl.

> The claimant can occasionally reach overhead. The claimant can frequently handle, finger, and feel. The claimant is to avoid concentrated exposure to dusts, fumes, gases, odors, and poor ventilation. The claimant can perform unskilled work. 20 CFR 416.967(b).

(TR. 301).

Based on the finding that Ms. Pruitt could not perform her past relevant work, the ALJ proceeded to step five. There, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 331). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 331). The ALJ adopted the testimony of the VE and concluded that Ms. Pruitt was not disabled based on her ability to perform the identified jobs. (TR. 308).

## III. ISSUES PRESENTED

On appeal, Ms. Pruitt alleges the ALJ erred: (1) at step three, (2) in evaluating evidence from a consultative examiner, (3) in formulating the RFC, and (4) at step five. (ECF No. 15:4-14).

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh

the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. STEP THREE

Plaintiff alleges the ALJ erred at step three in concluding that Ms. Pruitt did not meet Listing 1.04(A). (ECF No. 15:10-13). The Court rejects this argument.

### A. Criteria at Step Three

At step three, the ALJ must determine whether the claimant's impairment is "equivalent to one of a number of listed impairments that the Secretary acknowledged as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). If this standard is met, the claimant is considered *per se* disabled. *Knipe v. Heckler*, 755 F.2d 141, 146 (10th Cir. 1985). The question of whether a claimant meets or equals a listed impairment is strictly a medical determination. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990); 20 C.F.R. § 416.925(c)(3)-(4) & 416.926(b). "The claimant has the burden at step three of demonstrating, through medical evidence, that his impairments "meet *all* of the specified medical criteria" contained in a particular listing. *Sullivan v. Zelbey*, 493 U.S. 521, 530 (1990) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Once the claimant has produced such evidence, the burden is on the ALJ to identify and discuss any relevant listings. *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 n. 3 (2005). In doing so, the ALJ must weigh the evidence and make specific findings to support the step three determination. *Clifton*, at 1009.

**B.     Listing 1.04(A)**

Listing 1.04 outlines the requirements to establish whether a presumptive disability exists in an individual with a disorder of the spine. Listing 1.04 can be satisfied three ways, as set forth in subsections (A)-(C). All three subsections require that the claimant first establish that he has a disorder of the spine, "resulting in compromise of a nerve root (including the cauda equine) or the spinal cord." Listing 1.04. Subsection (A) requires additional proof that the claimant establish:

> [1] [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain,
>
> [2] limitation of motion of the spine,
>
> [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and,
>
> [4] if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04(A).

**C.     The ALJ's Step Three Findings**

At step three, the ALJ concluded that Plaintiff did not meet or equal a listed impairment. (TR. 300). In doing so, the ALJ made the following findings:

> Listing 1.04 requires the presence of a compromise of a nerve root. The evidence of record is devoid of such evidence. Furthermore, even if there was evidence of a nerve root compromise, the claimant does not show motor loss, muscle weakness, sensory or reflex loss.

(TR. 301).[2]

---

[2] The ALJ made additional findings regarding a lack of evidence for Listings 1.04(B) and 1.04(C), but these findings are immaterial as Ms. Pruitt limits her challenge to the ALJ's findings regarding Listing 1.04(A).

5

### D. No Error in the ALJ's Step Three Analysis

Ms. Pruitt alleges the ALJ ignored medical evidence which established that Plaintiff met Listing 1.04(A). The Court finds no error.

At step two, the ALJ concluded that Plaintiff had a severe impairment involving degenerative disc disease. (TR. 299). This finding satisfied the initial criteria of Listing 1.04 which required proof of a "disorder[] of the spine." *See* Listing 1.04 (specifically mentioning degenerative disc disease as a "disorder of the spine."). But in addition to this initial determination and to meet Listing 1.04(A), Ms. Pruitt had to present evidence that she suffered from:

> (1) evidence of nerve root compression,
>
> (2) limitation of motion of the spine,
>
> (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and,
>
> (4) positive straight-leg raising test (sitting and supine).

Listing 1.04(A). Plaintiff cites medical evidence which shows that she suffered from:

- a compromised nerve root;
- limitation of motion of the spine; and
- a positive straight-leg raising test.

(ECF No. 15:11-12). The record supports Ms. Pruitt's allegations. *See* TR. 244 (noting a decrease in the lumbar and cervical range of motion and positive straight-leg test on left leg); TR. 627 (MRI of lumbar spine noting small annular tear and central herniated disc encroaching on the L5 nerve roots); TR. 693 (noting limited range of motion in Plaintiff's lumbar spine; positive straight-leg raising test on left leg); TR. 696 (same).

But Ms. Pruitt does not present any evidence that she suffered from motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory loss, which is required to prove a *per se* disability under Listing 1.04(A). *See supra*. In fact, the medical record provides evidence to the contrary. *See* TR. 243 (findings from consultative examiner Dr. Juan Maldonado who specifically noted "no weakness atrophy identified.") (TR. 243).

Absent evidence of muscle atrophy/sensory loss, Ms. Pruitt cannot meet Listing 1.04(A). *See Candelario v. Barnhart*, 166 F. App'x 379, 384 (10th Cir. 2006) (rejecting plaintiff's claim that he had met Listing 1.04(A) because "there was no evidence of motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss … as Listing 1.04(A) requires.") (internal quotation marks omitted). Accordingly, the Court rejects Plaintiff's argument that the ALJ erred in failing to find a presumptive disability under Listing 1.04(A).

**VI. THE ALJ'S CONSIDERATION OF EVIDENCE**

Ms. Pruitt alleges that the ALJ erred in evaluating evidence from consultative examiner, Dr. S.A. Chaudry. (ECF No. 15:13-14). Plaintiff is wrong.

On February 21, 2018, Dr. Chaudry examined Ms. Pruitt and noted that she suffered from rheumatoid arthritis which presented with pain in the lumbar spine, hands and knees. (TR. 726). Regarding Plaintiff's hands, Dr. Chaudry specifically found:

> The patient can button and unbutton, pick up a piece of paper, and tear it up with no difficulty. Fine and gross manipulative movements of the hand and fingers are normal and intact. Grip strength in both hands normal, 5/5.

(TR. 727). Dr. Chaudry also stated that Plaintiff:

- had normal range of motion in her wrists, finger, and thumbs;

- had no muscle atrophy in her hands or sensory loss in her first three fingers;

- could effectively oppose the thumb to the fingertips;

- could manipulate small objects; and

- could effectively grasp tools such as a hammer, but "with difficulty" in her right hand.

(TR. 729).

In evaluating Dr. Chaudry's opinion, the ALJ stated:

The claimant appeared at another physical consultative examination on February 21, 2018. She reported pain in her lower back, knees, and hands. She said she can sit for 45 minutes at a time, stand for 30 minutes at a time, and walk unassisted for 30 minutes at a time. She had painful range of motion in her lumbar spine, right fingers, and knees. She had osteoarthritic changes in the fifth distal interphalangeal joint on her left hand and swelling in a number of joints of the fingers of the right hand. These impairments limit the claimant to light work with postural, reaching, and manipulative limitations as stated in her residual functional capacity.

(TR. 304).

Ms. Pruitt contends that the ALJ failed to properly weigh Dr. Chaudry's opinion and rejected part of Dr. Chaudry's opinion "about hand use" "without proper analysis." (ECF No. 15:13). The basis for Plaintiff's argument is a belief that Dr. Chaudry's finding regarding some "difficulty" in grasping hammer-like tools with her right hand, somehow conflicts with the RFC which allowed "frequent handling." (ECF No. 15:7). The Court disagrees.

Although the RFC is silent with respect to a limitation on "grasping," SSR 85-15 defines the DOT ability of "handling" as including "grasping." *See* Social Security Ruling 85–15, Titles II and XVI: Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments at *7 (1985). Thus, under this definition, the RFC for frequent "handling" necessarily included a finding that Plaintiff retained the ability to "frequently" grasp. Contrary to Plaintiff's argument, this finding does not conflict with Dr. Chaudry's opinion.

Handling/grasping is defined as "gross manipulation." *See Walling v. Berryhill*, 370 F. Supp. 3d 1306, 1310 (W.D. Okla. 2019); *Montoya v. Berryhill*, No. CV 16-1089 SCY, 2018 WL 1580296, at *1 (D.N.M. 2018). Dr. Chaudry opined that Plaintiff's "gross manipulative movements of the hand and fingers [we]re normal and intact." (TR. 726). Thus, the ALJ correctly found that Dr. Chaudry's opinion was consistent with the limitation for "frequent" handling as set forth in the RFC. *See Moua v. Colvin*, 541 F. App'x 794, 797 (10th Cir. 2013) (rejecting plaintiff's challenge to improper evaluation of medical opinion which noted "some" "reaching and fingering" limitations on one hand, noting that the statement "described only a possible limitation" and the plaintiff's argument "was foreclosed … by [the reporting physician's] opinion that [the plaintiff] could use both hands for gross and fine manipulation.") (internal quotation marks and citation omitted).

Although the ALJ did not expressly weigh Dr. Chaudry's opinion, the need for express analysis was weakened because the opinion did not conflict with the RFC. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("in this case none of the record medical evidence conflicts with the ALJ's conclusion that claimant can perform light work,

. . . [thus] the need for express analysis is weakened."). Thus, the Court rejects Plaintiff's challenge to the ALJ's evaluation of Dr. Chaudry's opinion.

## VII. THE RFC

Ms. Pruitt alleges error in the RFC because it failed to include: (1) environmental limitations related to her asthma involving exposure to wetness, humidity, and heat; and (2) limitations related to her migraine headaches involving exposure to bright lights and an allowance for sunglasses. (ECF No. 15:6-7). According to Ms. Pruitt, "[i]t is a bad RFC because all environmental limitations are not in the RFC, nor are all the 'functionally distinct' limitations attributable to Ms. Pruitt." (ECF No. 15:6). In her argument, Plaintiff notes the ALJ's reference that Ms. Pruitt had worn sunglasses at a doctor's visit where she had complained of a migraine headache. (ECF No. 15:6). But Ms. Pruitt *does not cite any evidence* that any medical professional had imposed limitations of the type she suggests. *See* ECF No. 15. Accordingly, the Court rejects Plaintiff's argument that the RFC was erroneous because it had failed to include additional limitations. *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (noting no error by the ALJ because the plaintiff failed to "discuss any evidence that would support the inclusion of any limitations") (citation and internal brackets omitted)); *Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (noting that it is not the Court's obligation to "search the record and construct a party's arguments."); *Meeks v. Berryhill*, No. CIV-18-675-BMJ, 2019 WL 1519310, at *2 (W.D. Okla. Apr. 8, 2019) (rejecting plaintiff's argument alleging error through the failure to include additional limitations in the RFC because "[p]laintiff [did] not allege, or point to substantial evidence to prove, she ha[d] [the] [alleged] limitations.").

## VIII. STEP FIVE

In the RFC, the ALJ stated that Ms. Pruitt could perform unskilled work. (TR. 304). With this limitation, the ALJ found that Plaintiff could perform the jobs of: (1) self-service store attendant (DOT #299.677-010); (2) cashier II (DOT #211.462-010); and (3) cafeteria attendant (DOT #311.677-010). (TR. 308). Ms. Pruitt alleges error at step five, arguing that: (1) the jobs of self-service store attendant and cashier II are incompatible with an RFC for unskilled work and (2) she is unable to perform the job of cafeteria attendant due to limitations involving her asthma, migraines, and right hand. (ECF No. 15:4-10). The Court finds error with respect to the ALJ's reliance on the jobs of self-service store attendant and cashier II, but concludes that the error is harmless in light of the ALJ's finding that Plaintiff could perform work as a cafeteria attendant.

### A. The Jobs of Self-Service Store Attendant and Cashier II

The jobs of self-service store attendant and cashier II are "unskilled" and require "reasoning level 3." *See* DOT #299.677-010 (self-store attendant) & DOT #211.462-010 (cashier II). According to the Social Security regulations and the DOT:

- "unskilled" work is defined as entailing only "simple duties" and typically requiring one month or less of training to learn; and

- "reasoning level 3" requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."

*See* 20 C.F.R. § 416.968(a); DOT *Appendix C—Components of the Definition Trailer*, 1991 WL 688702.

According to Ms. Pruitt, the ALJ improperly relied on these jobs at step five because they required a "reasoning level 3," which Plaintiff alleges is inconsistent with the ALJ's finding that Plaintiff could only perform "unskilled," or, "simple" work. (ECF No. 15:4-6). The Court agrees. *See Hackett v. Barnhart*, 395 F3d. 1168, 1176 (10th Cir. 2005) (finding that an RFC for "simple and routine work tasks" "seem[ed] inconsistent with the demands of level-three reasoning.") (internal citation omitted).

### B. Cafeteria Attendant

Even though the ALJ erred in relying on the jobs of self-service store attendant and cashier II, the step five finding is salvaged by the ALJ's conclusion that Plaintiff could perform the job of cafeteria attendant. (TR. 308). Ms. Pruitt argues improper reliance on this job, alleging that it is inconsistent with her limitations involving: (1) exposure to heat, cold, wetness, and humidity due to her asthma, (2) a need to wear sunglasses due to her migraine headaches, and (3) an inability to grasp objects with her right hand. (ECF No. 15:6-10). But as discussed, there is no evidence that Plaintiff suffered from these limitations and no error exists in the RFC or the hypothetical to the VE which failed to account for the same. *See Richards v. Colvin*, 640 F. App'x 786, 793 (10th Cir. 2016) ("A hypothetical question is sufficient if it contained all of the limitations found to exist by the ALJ.") (internal quotation marks and citation omitted); *see supra*. Thus, the Court: (1) rejects Plaintiff's challenge to the job of cafeteria attendant, (2) concludes that the ALJ properly relied on this job, and (3) affirms the ALJ's decision.

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **AFFIRMS** the Commissioner's decision.

ENTERED on September 30, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE